UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL TREVINO,

   Plaintiff,

v.         Case No.  2:21-cv-918-JES-NPM

KENNETH E. ANDREWS, Collier
County   Florida,   State
Attorney,

   Defendant.
_____/

## OPINION AND ORDER

  Plaintiff Daniel Trevino ("Plaintiff" or "Trevino"), proceeding pro se, brings the instant action under 42 U.S.C. § 1983.  He essentially seeks to compel the State Attorney's Office to compare deoxyribonucleic acid (DNA) found under the fingernails of the murder victim in his state criminal case with DNA currently in the possession of officials in the State of Washington.  (Doc. 1).  Trevino's amended complaint (Doc. 15) and the defendant's motion to dismiss (Doc. 16) are presently before the Court.

  Upon careful consideration of the amended complaint, the defendants' motion to dismiss, and pertinent law, the Court concludes that the amended complaint must be dismissed for failure to state a claim on which relief may be granted.

## I.   Procedural History

### A.   Case Background

To provide background and context for the allegations and claims in Trevino's complaint and amended complaint, the Court takes notice of its prior order on Trevino's 28 U.S.C. § 2254 habeas petition, which contained a detailed history of Trevino's underlying criminal case and postconviction proceedings.   See Trevino v. McNeil, No. 2:06-cv-41-JES-DNF, 2009 WL 804528 (M.D. Fla. Mar. 26, 2009) (the "Habeas Order").   In 1997, Trevino was found guilty of first-degree murder.   Id. at *2.   In a written order, entered at the conclusion of the guilt phase of Trevino's death-penalty trial, the state trial judge noted that both Daniel Trevino and Beto Trevino ("Beto") were arrested for the murder of Michael Lovett.   Id. at *19-20.   The judge recognized that, because there was more than one defendant, the evidence was insufficient to show that Daniel Trevino was the actual killer of Michael Lovett.   Id. at *19.   The judge also recognized that the police investigator's probable cause affidavit suggested that Beto was the person who actually fired the weapon, killing Mr. Lovett, but "[t]he investigation of the Collier County Sheriff's Department . . . viewed both defendants as equally culpable."   Id. The court noted that "circumstantial evidence could equally sustain the conclusion that Daniel Trevino was aiding and abetting a felony in the course of which a murder was committed by others

but he himself did not kill, attempt to kill, or intend that a killing take place[.]" <u>Id.</u> at *20.  The state court sentenced Trevino to life in prison without the possibility of parole.  <u>Id.</u> at *2.

In a subsequent state postconviction motion, Trevino argued that defense counsel was constitutionally ineffective for failing to have DNA recovered from the victim's body tested and compared to Beto's DNA prior to trial.  Habeas Order, at *16.  In rejecting this ineffective assistance claim, the postconviction court explained that "the Defendant's presence at the crime scene was established by his statements to law enforcement.  The fact that Beto and the victim may have struggled does not affect the Defendant's culpability in this case." <u>Id.</u> at *17.[1]

The Court also takes notice of a May 6, 2019 order from the Twentieth Judicial Circuit Court in and for Collier County, which ruled on Trevino's fourth petition for postconviction DNA testing. The state court explained and denied Trevino's request as follows:

> In the instant motion the Defendant specifically seeks an order from this Court directing the Codis Crime Lab Manager of the Washington State Patrol to provide this Court a DNA profile from Robert "Beto" Trevino. Defendant asserts that he witnessed Beto commit the murder in this case and that

---

[1] Under the principal theory of murder, a person who "aids, abets, counsels, hires, or otherwise procures" the murder "is a principal in the first degree and may be charged, convicted, and punished as such."  Fla. Stat. § 777.011.

comparing Beto's DNA profile to one sample
taken from the victim's fingernails will prove
that Defendant is innocent.   Defendant
alleges that Beto was killed in 1998 but was
an inmate in Washington State in the early
1990s and therefore, his DNA profile would be
stored in the CODIS system.

. . .

In the present case, the Defendant admits to
being at the crime scene and intends to prove
someone was present at the crime scene with
him.   The fact that Beto and the victim may
have struggled does not affect the Defendant's
culpability in this case.   Defendant admitted
to his presence at the scene of the murder,
therefore any comparative analysis of DNA
profiles will not shed any light on the
Defendant's innocence or guilt.   As indicated
in the Court's prior orders on the Defendant's
motions for Postconviction DNA testing, the
presence of another person's DNA does not
establish that Defendant was not at the crime
scene or that he did not commit the murder.
Hitchcock v. State, 866 So. 2d 23 (Fla. 2004).
The Defendant has failed to demonstrate how
comparing DNA profiles would lead to a
reasonable probability of acquittal or a
lesser sentence.   Bates v. State, 3 So.3d
1091, 1098 (Fla. 2009).

(See Case No. 96-1321CF, Twentieth Judicial Circuit Court in and

for Collier County, Florida at docket entry 698) ("Order, State

DNA Petition"). [2]

---

[2] The Court notices the Habeas Order and the order on
Trevino's state petition to provide background for this section
1983 complaint.   While the contents of the earlier orders help
clarify Trevino's claims here, nothing contained in the orders was
necessary to the Court's conclusions.

**B.   First Complaint and Motion to Dismiss**

Trevino initiated this action on December 13, 2021 by filing a pro se complaint under 42 U.S.C. § 1983.  (Doc. 1).  In his original complaint, Trevino sought to compare the DNA recovered from under the murder victim's fingernails to that of his co-defendant "Beto."  (Id.)  Specifically, Trevino asserted that Defendant Andrews "refuses to exercise obligations of his office . . . to have the DNA in Trevino's case compared with the DNA . . . being held in the CODIS of Washington State[.]"  (Doc. 1 at 3, ¶ 5).  Trevino asserted that ASA Andrew's refusal to facilitate the comparison of the DNA:  (1) violated equal protection; (2) violated the Eighth Amendment; and (3) violated due process.  (Doc. 1 at 6–7, ¶ 16).  The defendants filed a motion to dismiss, arguing, among other things, that the claims were barred under the Rooker-Feldman doctrine[3] and that Trevino had not stated a claim on which relief could be granted.  (Doc. 11).

In a considered opinion, the Court found that—while Trevino's claims were not barred from review under Rooker-Feldman—he had not stated a claim on which relief could be granted.  (Doc. 14 at 6–

---

[3] The Rooker-Feldman doctrine bars federal district courts from reviewing state-court decisions. Behr v. Campbell, 8 F.4th 1206, 1208 (11th Cir. 2021).  The Court noted that Plaintiff's original complaint did not "invite federal court review and reversal of [any] state court decisions . . . Rather, [Plaintiff] asserts he has a valid right to DNA evidence under the circumstances of his case pursuant to § 1983."  (Doc. 14 at 8).

13).   Therefore, the Court dismissed the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   (Id. at 13). Trevino was provided an opportunity to amend his complaint, but the Court noted the following:

> Given the Eleventh Circuit's conclusion that Florida's DNA access procedures are constitutional, see Alvarez, 679 F.3d at 1266 n.2, and given that Plaintiff was able to file a state petition under Rule 3.853 of the Florida Rules of Criminal Procedure seeking the DNA at issue here (Doc. 1 at 3), it appears unlikely that Plaintiff will be able to state a cognizable section 1983 claim in an amended complaint.  Nevertheless, Plaintiff may amend his complaint to clarify the substance of his claims, demonstrate that he did not receive the procedural process he was due, and show how the DNA testing would exonerate him of the offenses or mitigate his sentence.

(Id. at 14–15).   The Court also instructed Trevino that he was required to serve the current State Attorney for the Twentieth Judicial Circuit in and for Collier County, Florida in her official capacity and cautioned him that his failure to effectuate service within ninety days of filing his amended complaint would result in the dismissal of this action without further notice.  (Id. at 16).

**C.   Pleadings**

Trevino filed an amended complaint on May 18, 2023, this time naming "Kenneth E. Andrews, or his successor" as the sole defendants and generally questioning the constitutionality of

6

portions of Florida's DNA-testing statutes. (Doc. 15).[4]

Defendants filed a second motion to dismiss. (Doc. 16). They assert that: (1) Kenneth Andrews is not the proper defendant in this case; (2) Trevino has not stated a claim on which relief may be granted; (3) the defendant is entitled to prosecutorial immunity; (4) the defendant is entitled to qualified immunity; and (5) the defense is entitled to Eleventh Amendment immunity. (Id.)[5]

## II.  Standard of Review

On a motion to dismiss, this Court accepts as true the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences

---

[4] Nothing in the record suggests that Plaintiff effectuated service on the successor state attorney.

[5] Plaintiff has neither responded to the motion to dismiss nor amended his complaint, and the time to do so has passed. Plaintiff was advised that he "must timely respond to any motion" or "the Court will assume Plaintiff does not oppose the relief requested and decide the motion as if it is unopposed." (Doc. 3 at 6, ¶9). As to motions to dismiss in particular, Plaintiff was advised he must file a response or an amended complaint within 21 days. (Id. ¶ 9(a)). Even so, the Court has carefully reviewed the allegations in the amended complaint to determine whether Plaintiff has stated one or more claims on which relief may be granted.

therefrom are taken as true."). However, the Supreme Court has explained that factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its decision in Twombly, set forth a two-pronged approach to motions to dismiss. First, a reviewing court must determine whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 679. Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### III. Discussion

Trevino petitioned in state court, under Florida Statute § 925.11 and Rule 3.853 of the Florida Rules of Criminal Procedure, "for a comparative DNA analysis test that would prove Robert Trevino, and not Daniel Trevino, actually murdered the victim of his charged crime." (Doc. 15 at 3); see also Order on State DNA Petition, Part I(A) supra. His petition was denied by the state courts, and Trevino now argues that Defendant Andrews "unfairly exploit[ed]" a "loophole" in Florida Statute § 925.11(2)(f)(3) that "gives the court the discretion to deny any request [for DNA testing] if the petitioner cannot prove the evidence would result in either an acquittal at trial or a reduced sentence." (Id. at 3, 4). Specifically, Trevino disagrees with the portion of the state order denying his request for DNA testing and finding that "[Trevino] has failed to demonstrate how comparing DNA profiles would lead to a reasonable probability of acquittal or a lesser sentence." See Order, State DNA Petition, Part I(A) supra.[6]

---

[6] Florida provides a statutory method for obtaining postconviction DNA testing. These provisions require the state court deciding a petition for DNA testing to consider whether the evidence, if presented at trial, could have resulted in an acquittal or mitigated the defendant's sentence. See Fla. Stat. § 925.11(2)(f)(3) (stating that, when ruling on a motion for DNA testing, the court shall make a finding of "[w]hether there is a reasonable probability that the sentenced defendant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial"); Fla. R. Crim. P. 3.853 (b)(3) (requiring the movant to include a statement explaining how the DNA testing "will exonerate the movant of the crime for which

Trevino does not argue that the Florida courts erroneously applied or misinterpreted Florida's DNA access procedures when they denied his four petitions for DNA testing.[7]  In fact, he concedes that he "was charged [and convicted] under the principal theory of the murder statute," and, although labeling it a "loophole," he also concedes that Florida's DNA statutes <u>require</u> state courts to consider whether the DNA evidence sought by the petitioner would have resulted in an acquittal or reduced sentence if offered at trial.  (<u>See</u> Doc. 15 at 3, 4-5) (referring to Florida Statute § 925.11(2)(f)(3)).

Rather, Trevino now argues that Florida Statute § 925.11(2)(f)(3) is flawed and unconstitutional because it <u>only</u> requires the state court to consider whether additional DNA testing could have led to an acquittal or to a lesser sentence if the evidence had been available at trial.  (<u>See</u> Doc. 15 at 6 (stating that "statute 925.11(2)(f) no longer affords the 6th amendment process it was enacted to enforce")).  Specifically, Trevino argues that, absent this "loophole," the courts could also consider

the movant was sentenced" or "mitigate the sentence received by the movant for that crime").

[7] Nor could he.  In <u>Alvarez v. Att'y Gen. for Fla.</u>, 679 F.3d 1257, 1262-63 (11th Cir. 2012), the Eleventh Circuit explained that a complaint alleging that a state court wrongfully denied DNA evidence under a state statute, but **not** complaining that the statute itself was flawed, would be barred by the <u>Rooker-Feldman</u> doctrine.

whether, if offered at trial, the DNA evidence would have encouraged the jury to use their "pardon powers" to find the petitioner guilty of a lesser-included offense. (Id. at 4). Trevino asserts that requiring him to demonstrate that the DNA found under the victim's fingernails would have exonerated him or mitigated his sentence overlooks the possibility that—while the DNA results would not, in the strictest sense, affect his murder conviction as a principal—he could have received a "jury pardon" and been convicted of a lesser-included crime if the jury had been offered additional evidence showing that Beto had been in a physical altercation with the victim before killing him. (Id. at 6-7). In other words, Trevino argues that section 925.11(2)(f)(3) fails to contemplate that the jury might overlook the law and jury instructions in certain cases and acquit a defendant who is charged only as a principal. This argument fails for two reasons.

First, while the Supreme Court has recognized that "the jury has the power to bring in a verdict in the teeth of both law and facts," Horning v. District of Columbia, 254 U.S. 135, 137-40 (1920), courts have long recognized that "the jury's de facto power to refuse to apply the law as instructed by the court . . . is in dereliction of the jury's sworn duty." United States v. Funches, 135 F.3d 1405, 1408 (11th Cir. 1998). See also Sanders v. State, 946 So.2d 953, 958 (Fla. 2006) ("By definition, jury pardons violate the oath jurors must take before trial, as well as the

instructions the trial court gives them."); United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it."). And given the disfavor with which "jury pardons" are viewed in both state and federal courts, it is beyond dispute that Trevino has no constitutional right to one.

Second, in District Atty's Office for the Third Judicial Circuit v. Osborne, 557 U.S. 52 (2009), the Supreme Court endorsed the DNA testing procedures set forth in Alaska and federal statutes. Both the Alaska and federal DNA-testing statutes contain provisions that are similar to Florida's rules in that they require the applicant to identify a theory of defense that would establish his or her actual innocence or raise a reasonable probability that the applicant did not commit the offense before DNA testing will be ordered. See, e.g., Ak. Sat. § 12.73.020 (9) (allowing the court to order postconviction DNA testing of evidence when the proposed DNA testing would "raise a reasonable probability that the applicant did not commit the offense"); 18 U.S.C. § 3600(a) (1), (8)(requiring the court ordering testing to find that the testing could produce evidence that would "raise a reasonable probability that the applicant did not commit the offense").

While containing similar provisions as the Alaska and federal DNA statutes regarding the state court's consideration of whether the DNA evidence could exonerate the petitioner, the Florida DNA

statutes <u>also</u> direct the court to consider the effect of the DNA evidence on the petitioner's sentence.[8]  Given that Florida's DNA-testing statute allows a reviewing court to consider whether the DNA evidence will exonerate a prisoner <u>or</u> merely mitigate his sentence, it is more applicant-friendly than either the Alaska or federal provisions.  And as recognized by the Eleventh Circuit in <u>Alvarez</u>:

> [I]nasmuch as Florida's postconviction DNA access procedures either mirror or are more applicant-friendly than the Alaska and federal statutes endorsed in <u>Osborne</u>, Florida's postconviction DNA access procedures plainly do not offend any principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, nor do they transgress any recognized principle of fundamental fairness in operation.

679 F.3d at 1266 n.2 (citing <u>Osborne</u>, 129 S. Ct. at 2320).  Applying this clear directive from <u>Alvarez</u>, this Court finds that the portion of Florida's DNA-access procedures requiring the state court to consider whether the DNA evidence would exonerate the petitioner or reduce his sentence is not unconstitutional because it mirrors in part, and is more applicant friendly, than statutes approved by the Supreme Court.  While Trevino disagrees with the Eleventh Circuit's conclusion on this matter (<u>see</u> Doc. 15 at 6),

---

[8] <u>See</u> Fla. Stat. 925.11(2)(f)3(directing the court to consider whether a petitioner would have been acquitted <u>or</u> received a lesser sentence if the evidence had been admitted at trial); Fla. R. Crim. P. 3.853 (stating that the movant must explain how the DNA testing will exonerate him <u>or</u> mitigate his sentence).

this Court is not free to ignore binding Supreme Court or Eleventh Circuit precedent in favor of what he views to be a better line of reasoning.  See <u>Jaffree v. Wallace</u>, 705 F.2d 1526, 1533 (11th Cir. 1983) ("Judicial precedence serves as the foundation of our federal judicial system.  Adherence to it results in stability and predictability.").

### IV.  Conclusion

Liberally construing the arguments raised in Trevino's amended complaint, the Court finds that he has not stated a claim on which relief may be granted.[9]  Because Trevino's theory of relief is foreclosed by binding precedent, a second amendment of his complaint would be futile.  Accordingly, the dismissal is without leave to amend.  See <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1133 (11th Cir. 2019) (recognizing that the court need not provide a <u>pro se</u> plaintiff an additional chance to amend if amendment would be futile).

Accordingly, it is now **ORDERED**:

1.   The Defendants' Motion to Dismiss (Doc. 16) is **GRANTED.**

---

[9] To the extent Trevino intended to raise additional claims or arguments in his amended complaint, they are dismissed under Rules 8 and 10 of the Federal Rules of Civil Procedure and for failing to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

2.    The amended 42 U.S.C. § 1983 complaint filed by Daniel Trevino (Doc. 15) is **DISMISSED** for failure to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

3.    The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment in favor of the defendants.

**DONE AND ORDERED** in Fort Myers, Florida on December 5, 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA:  FTMP-2
Copies: Daniel Trevino, counsel of record